IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN
_____

BEN MASEL and
BEN MASEL FOR UNITED STATES SENATE,

        Plaintiffs,

                                      MEMORANDUM AND ORDER
  v.                                07-cv-454-jcs

MIKE MANSAVAGE, JOHN McCAUGHTRY,
MEGAN MARY-LEE RUMPZA, AMY CATHERINE COWELL,
ROGER VOGTS and MARK GUTHIER,

        Defendants.
_____

       Plaintiffs Ben Masel ("Masel") and Ben Masel for United States Senate (hereinafter "Masel for Senate") commenced this action in the Circuit Court of Dane County, Wisconsin against defendants Mike Mansavage ("Mansavage"), John McCaughtry ("McCaughtry"), Megan Mary-Lee Rumpza ("Rumpza"), Amy Catherine Cowell ("Cowell"), Roger Vogts ("Vogts"), Mark Guthier ("Guthier") and Board of Regents of the University of Wisconsin System ("Board of Regents") alleging deprivation of the rights provided under the First, Fourth and Fourteenth Amendments to the United States Constitution and parallel Wisconsin Constitution provisions. Defendants had the case removed to the United States District Court for the Western District of Wisconsin on August 16, 2007 for federal question because plaintiffs' claims fall under 42 U.S.C. § 1983. On November 26, 2007 the Court ordered the dismissal of defendant Board of Regents in accordance with the parties' stipulation.

Jurisdiction is based on 28 U.S.C. §§ 1331 and 1343. The matter is currently before the Court on Rumpza, Cowell, Vogts and Gutheir's (referred to collectively in this motion as "defendants") motion for summary judgement. The following facts are undisputed.

## BACKGROUND & FACTS

The Wisconsin Union operates the college student unions at the University of Wisconsin ("UW") and is governed by the Board of Regents for the University of Wisconsin-System. Guthier has been the Director of the Wisconsin Union since November 2001 and Vogts has been the Assistant Facilities Director for the Wisconsin Union since October 1996. The Memorial Union is one of the UW union buildings and is located at 800 Langdon Street, Madison, Wisconsin 53706. At all times pertinent to this lawsuit Cowell and Rumpza were employed as Building-Event Managers for the Memorial Union.

The Memorial Union is a student union that contains facilities for meetings, performances, mini courses, musical events, presentations and guest accommodations, among other uses. It is a gathering facility for faculty, staff, students, alumni, Union members and members of the armed services on the campus of the University of Wisconsin-Madison, as well as members of the general public. Notices are posted at the Memorial Union informing people that use of the facilities are restricted to members, students, UW faculty and staff, uniformed members of the armed services and

guests unless a person obtains a one-day guest pass and such guest passes may be obtained up to three times per year per person.

The Memorial Union Terrace ("Terrace") is an outdoor space abutting the Memorial Union building that provides seating, performance space and food and beverage sales. The Terrace is bounded on the south by the Rathskeller and Lakefront on Langdon restaurants, which are located inside the Memorial Union building, and on the north by the public walkway along Lake Mendota. There is a walkway that runs along the outside of the Lakefront on Langdon restaurant on the north and leads to a parking lot that is located on the east of the Memorial Union building and this walkway is part of the outdoor space considered the Terrace (hereinafter the "Terrace walkway"). The Rathskeller bar and cafeteria management run the food service operations on the Terrace, which includes beer sales, a large outdoor grill and an ice cream stand.

The Wisconsin Union has a policy, FM1-5 "Literature Distribution Policy of the Wisconsin Union" ("FM1-5 policy"), that addresses where distribution can be conducted at the Memorial Union and what can be distributed. Neither the Terrace and/or Terrace walkway are areas listed as an approved location for free literature distribution. The policy "defines literature distribution to include: newspaper distribution, leafleting, and distribution of printed material, petitions, and surveys." (Guthier Aff., Ex. A.)

As director of the Wisconsin Union, Guthier has interpreted the FM1-5 policy as limiting campaign-type activities (e.g., displaying signs, soliciting signatures for petitions, requesting donations or distributing campaign literature) to certain locations around the Memorial Union.  Both prior to and during the summer of 2006 Vogts asked several campaign organizations that were violating the FM1-5 policy by engaging in campaign activities in non-designated areas, such as the Terrace, to move such activities to the appropriate designated areas.  Specifically, Vogts contacted supporters of Governor Jim Doyle, Congresswoman Tammy Baldwin and Senator Herb Kohl and all groups moved their campaign activities as requested.

Vogts instructed Memorial Union staff to inform a member of management when they became aware of a person violating the FM1-5 policy.  Members of management were instructed to ask the violator to come into compliance by moving to designated areas as set forth under the FM1-5 policy.  However, if an incident was not brought to management's attention then individuals may have violated the FM1-5 policy without being asked to come in compliance.

On June 29, 2006 the Memorial Union was hosting a hip-hop music performance on the Terrace.  At approximately 10 p.m. Masel entered the Terrace and positioned himself on the Terrace walkway holding a sign referring to his campaign for United States Senator and holding a clipboard bearing his nomination papers (i.e., a

4

petition) where eligible Wisconsin voters could sign to support Masel's candidacy. He was in that location for over an hour before anyone from the Memorial Union staff approached him. Neither Masel or Masel for Senate were invited to campaign at the Memorial Union.

Rumpza and Cowell approached Masel and told him that he was to stop campaigning and move to another designated location if he wished to continue. Masel refused to move. Rumpza and Cowell then contacted Vogts to inform him that Masel was engaging in campaign activities and had refused to move despite their request to have him do so. Vogts instructed Rumpza and Cowell to provide Masel a copy of the FM1-5 policy and ask Masel to move again. Rumpza and Cowell followed Vogts' instruction but Masel continued to refuse to move to an appropriate distribution area.

In accordance with Vogts' instructions Rumpza and Cowell contacted the University of Wisconsin-Madison police when Masel refused to move. Defendants Mansavage and McCaughtry responded to the call and arrested Masel. In response to the June 29, 2006 incident plaintiffs brought this current action against Rumpza, Cowell, Vogts and Guthier alleging violation of their right to free expression and against Mansavage and McCaughtry alleging violation of Masel's right to be free from unreasonable seizure.

MEMORANDUM

Defendants argue that the Court should grant summary judgment on plaintiffs' First Amendment claims in favor of defendants

because defendants are entitled to qualified immunity. Defendants further argue that they are entitled to qualified immunity because the FM1-5 policy that they enforced against Masel did not violate the Constitution and even if there might be such a violation the fact that the policy violates the Constitution was not clearly established at the time it was enforced by defendants. Conversely, plaintiffs argue that defendants' enforcement of the FM1-5 policy violated their right to free expression under the First and Fourteenth Amendments and that such a violation was clearly established in the law at the time defendants' committed the alleged violation.

Under Federal Rule of Civil Procedure 56 summary judgment is appropriate "when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." Goldstein v. Fidelity & Guar. Ins. Underwriters, Inc., 86 F.3d 749, 750 (7th Cir. 1996) (citing Fed. R. Civ. P. 56); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The district judge's function in a summary judgment motion "is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249. Additionally, "it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." Id. at 248. Furthermore, all reasonable inferences from undisputed facts should

be drawn in favor of the nonmoving party. Baron v. City of Highland Park, 195 F.3d 333, 338 (7th Cir. 1999).

However, the nonmoving party cannot simply rest upon the pleadings once the moving party has made a properly supported motion for summary judgment; instead the nonmoving party must submit evidence to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Essentially, it becomes the nonmoving party's burden to demonstrate that there is a genuine issue of material fact, i.e., that "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249.

In general the doctrine of qualified immunity is based on the basic principle that "'[i]f the law did not put the [official] on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate.'" Belcher v. Norton, 497 F.3d 742, 749 (7th Cir. 2007) (quoting Saucier v. Katz, 533 U.S. 194, 202, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001)). In determining whether defendants are entitled to qualified immunity the Court must address two issues. Vose v. Kliment, 506 F.3d 565, 568 (7th Cir. 2007). First, the Court must examine the facts in the light most favorable to plaintiffs and determine if defendants violated one of plaintiffs' constitutional rights. Id. (citation omitted). Second, the Court determines whether that constitutional right was clearly established at the time the alleged violation

occurred. Id. (citation omitted). Furthermore, the burden is on plaintiffs to prove that defendants violated a clearly established constitutional right. Green v. Butler, 420 F.3d 689, 700 (7th Cir. 2005).

Plaintiffs' allege that defendants violated their constitutional right to free expression as provided under the First and Fourteenth Amendments by prohibiting them from engaging in campaigning activities (i.e., standing with campaign signs and having people sign the petition in support of Masel's candidacy for U.S. Senate) on the Terrace walkway. The parties do not dispute that the campaigning activities which plaintiffs engaged in at the Terrace are considered political expression and/or speech that is protected by the First Amendment. Accordingly, in determining whether defendants violated plaintiffs' constitutional right to free expression the issue that remains is whether the protection extends to a particular location of a public university's campus, i.e., the Terrace and the Terrace walkway.

Defendants direct the Court to the recent Seventh Circuit decision in Gilles v. Blanchard as clear case law supporting that in the setting of a public university enforcement of a policy limiting the location where uninvited guests may engage in protected speech and/or expression is not a violation of the uninvited guests' constitutional right of free expression. 477 F.3d 466 (7th Cir. 2007). Plaintiffs disagree and argue that the

8

current action is distinguishable from Gilles because here the location at issue is connected to a student union, which was not the location at issue in Gilles. However, plaintiffs cite to mere persuasive, not mandatory, authority in the form of a district court case to support their argument. See Spartacus Youth League v. Bd. of Tr. of Ill. Indus. Univ., 502 F. Supp. 789 (N.D. Ill. 1980). Although the facts are not identical, the Court finds the reasoning in Gilles to be controlling and will analyze the current action accordingly.[1]

A short discussion of Gilles is appropriate. In Gilles the plaintiff, Brother Jim, attempted to engage in protected religious speech from a grassy lawn in the middle of the Vincennes University campus and was told that based on the university's sales and solicitation policy he could only preach from a brick walkway unless he obtained prior approval from the dean. 477 F.3d at 469.

---

[1] The Court notes that in Gilles the Seventh Circuit found that in attempting to resolve whether the speech in that case was permitted in a specific location on a public university's campus use of the "forum" template would involve an unnecessary classification game. 477 F.3d at 473-74. Instead the Seventh Circuit focused on the university's power to control its property, as the classification of the pertinent location fell "into a crack between the rules." Id. at 471, 473. In this case, the Court follows the Seventh Circuit's reasoning and analysis in choosing not to engage in the forum "classification game" concerning the Terrace and/or the Terrace walkway as they also fall into a crack between the rules because they are neither completely open or completely closed to all uninvited guests or reserved for some uses but not others. Accordingly, the Court focuses on the UW's power to control its property instead of focusing on forum classification.

He found the brick walkway unsuitable because its close proximity to the street made it "a noisy locale for a speech." Id.  In suing the university Brother Jim argued that "since the lawn [was] public property and [was] suitable for speechifying, he [could] no more be forbidden to preach there than he could be forbidden to preach in a public park." Id.

The Seventh Circuit disagreed and reasoned that "[p]ublic property is property, and the law of trespass protects public property, as it protects private property from uninvited guests." Id. at 470.  Furthermore, "[t]he difference between invited and uninvited visitors is fundamental to a system of property rights." Id.  The Seventh Circuit explained that the university's policy of not allowing any uninvited guests to speak from the lawn had to be an acceptable policy that did not violate the Constitution otherwise "public universities cannot control their property." Id. at 471.  Moreover, the university's decision to "[c]onfin[e] solicitations to the walkway in front of the student union [was] entirely appropriate . . . ." Id.

Plaintiffs in the current action argue that the Terrace, and more specifically, the Terrace walkway are public property and prohibiting political expression there in accordance with the FM1-5 policy violates plaintiffs' right of free expression.  However, as set forth in Gilles, public universities are free to control their property by placing limits on where uninvited guests can engage in

10

expression and speech without violating the uninvited guests' free expression rights even though the property where access is limited is considered public property, i.e., owned by a public university. Id. at 470-71. Furthermore, the courts have already rejected the proposition "' that a campus must make all of its facilities equally available to students and nonstudents alike, or that a university must grant free access to all of its grounds or buildings.'" Id. at 470 (quoting Widmar v. Vincent, 454 U.S. 263, 268 n.5, 102 S. Ct. 269, 70 L. Ed. 2d 440 (1981)).

In this case, there is no dispute that plaintiffs were not invited to come to the Memorial Union to campaign. Also, the UW is not required to grant uninvited guests free access to any part of the Memorial Union, including the Terrace and Terrace walkway. Id. at 470. However, the FM1-5 policy does not prohibit uninvited guests from freely engaging in expression in the form of literature distribution (e.g., petition signing) at the Memorial Union; instead the policy merely limits where uninvited guests can engage in such expression to five designated areas around the Memorial Union. Also, one such designated area is the front walkway at the main entrance to the student union which in Gilles was found to be an appropriate location to limit uninvited guests' expression. 477 F.3d at 471. Accordingly, the FM1-5 policy is a constitutionally acceptable policy that controls access to the Memorial Union (i.e., property that is a part of a public university), including the

Terrace, by placing limits on where uninvited guests, like plaintiffs, are permitted to engage in speech and expression in the form of literature distribution as defined by the policy.

Although a public university can control the access of uninvited guests to its property what it cannot do is permit access to some uninvited guests while excluding others based on the content of their expression. Id. at 470. On its face the FM1-5 policy does not take into account the content of the expression, i.e., it is content neutral. Moreover, plaintiffs do not provide any evidence that the FM1-5 policy was being enforced in a discriminatory manner based on the content of uninvited guests' expressions.

Conversely, defendants provide further evidentiary support that the FM1-5 policy was being regularly enforced in a content neutral manner by listing three other political campaigns that had been asked to move in accordance with the policy before the incident with plaintiffs occurred. Also, plaintiffs' argument that the FM1-5 policy was not perfectly enforced based on the fact that Masel had been on the Terrace walkway for an hour before Rumpza and Cowell approached him concerning compliance with the policy does not show discriminatory enforcement of the policy because "[p]erfect past compliance with a rule is not a precondition to being allowed to continue enforcing the rule." Id. at 472.

Accordingly, the FM1-5 policy, on its face and as applied, does not violate plaintiffs' constitutional right to free expression.

After reviewing the facts and viewing them in a light most favorable to plaintiffs, they have failed to carry their burden and prove that defendants Guthier, Vogts, Rumpza and Cowell violated plaintiffs' constitutional right to free expression and accordingly defendants are entitled to the protection of qualified immunity without addressing the second qualified immunity issue. This provides defendants with immunity from plaintiffs request for damages but qualified immunity does not apply to claims for equitable relief. Denius v. Dunlap, 209 F.3d 944, 959 (7th Cir. 2000).

However, based on the undisputed facts, and having drawn all reasonable inferences in plaintiffs' favor, plaintiffs have failed to set forth any specific facts showing there is a genuine issue for trial concerning violation of their First Amendment rights. The law as set forth in Gilles permits the UW to limit where uninvited guests can engage in expression or speech to designated areas (e.g., the walkway at the entrance of the student union) without violating the uninvited guests' constitutional right to free expression. The FM1-5 policy as promulgated by the Wisconsin Union and enforced by defendants against plaintiffs is just such a constitutionally acceptable limit and plaintiffs have failed to prove otherwise. Accordingly, defendants Guthier, Vogts, Rumpza

13

and Cowell are entitled to judgment as a matter of law concerning all plaintiffs' First Amendment claims.

ORDER

IT IS ORDERED that defendants Guthier, Vogts, Rumpza and Cowell's motion for summary judgment is GRANTED.

IT IS FURTHER ORDERED that all plaintiffs' First Amendment claims against Guthier, Vogts, Rumpza and Cowell are DISMISSED with prejudice.

Entered this 17th day of December, 2007.

BY THE COURT:

/s/

_____
JOHN C. SHABAZ
District Judge